ETTOR *v.* CITY OF TACOMA.

HOWARD *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF. WASHINGTON.

Nos. 68, 69.   Argued December 6, 1912.—Decided April 7, 1913.

In the absence of legislation requiring compensation to be made for damages to abutting owners by change of grade of street, the municipality, being an agent of the State and exercising a governmental power, is not liable for consequential injuries provided it keep within the street and use reasonable care and skill in doing the work.

Under the statutes of the State of Washington as construed by the courts of that State this general rule was superseded by legislation which required municipalities to compensate for consequential damages.

A municipality cannot defend a suit for consequential damages on the ground that as the agent of the State it is immune, when its only authority to act is that given by the State coupled with an obligation to make compensation.

A state statute giving compensation for consequential damages caused by

change of grades of streets does not merely provide a remedy but creates a property right; to repeal such a statute so as to affect rights actually obtained thereunder is a deprivation of property without due process of law as guaranteed by the Fourteenth Amendment.

The statute of Washington repealing the former statute which gave a right to consequential damages from change of grade, as construed by the state courts as destroying rights to compensation which had accrued while the earlier act was in effect, amounts to a deprivation of property without due process of law.

Where no private rights have vested, a statute giving benefits under certain conditions may be repealed without violating the contract or due process provisions of the Federal Constitution, but the case is different when the right to compensation has actually accrued. *Salt Co.* v. *East Saginaw*, 13 Wall. 373, and *Wisconsin &c. Railway* v. *Powers*, 191 U. S. 375, distinguished.

57 Washington, 50, 698 reversed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of a statute of Washington in regard to damages for changing grade of streets, are stated in the opinion.

*Mr. Stanton Warburton*, with whom *Mr. John M. Boyle*, *Mr. E. B. Brockway* and *Mr. C. M. Boyle* were on the brief, for plaintiffs in error.

*Mr. Heman H. Field*, with whom *Mr. George W. Korte* and *Mr. T. L. Stiles* were on the brief, for defendant in error.

MR. JUSTICE LURTON delivered the opinion of the court.

These were actions to recover for damage inflicted upon abutting property in consequence of an original street grading done by the railroad company under authority and direction of the city of Tacoma.

At the time the grading was done there was in force an act of the Washington legislature which required the city

to make compensation for consequential damages due to
an original street grading.  Pending these suits and while
they were actually being heard, the provision of the act
referred to which expressly required the city to provide
for or make compensation for all such damage, was
amended so as to provide that the act should not apply to
the original grading of any street.  Laws of Washington,
1907, c. 153, p. 316, and Laws of 1909, c. 80, p. 151.  When
the attention of the trial court was called to this repealing
act, it directed a verdict for the city upon the theory that
the right of action was statutory and fell with the statute,
there being no saving clause.  This judgment, upon the
same ground, was affirmed by the Supreme Court of the
State.

For the plaintiffs in error the contention shortly stated
is, that the act of 1907 was the sole legislative authority
of the city for making the cuts and fills in front of their
premises upon the public street, and that that act expressly
required the city to make provision for compensating an
owner so damaged; and that their right to such compensa-
tion having accrued while the act was in force cannot be
destroyed by subsequent legislation without a violation
of the rights guaranteed by the Fourteenth Amendment.

In the absence of legislation requiring compensation
for such damage the general rule of law is that a munic-
ipality in making, grading and improving streets is the
agent of the State, exercising in the performance of such
work a governmental power, and is not liable for conse-
quential injuries to property abutting, if it keep within
the street and use reasonable care and skill in doing the
work.  4 Dillon Municipal Corporations, 5th ed., §§ 1674,
1677; *Smith* v. *Corporation of Washington*, 20 How. 135;
*Transportation Co.* v. *Chicago*, 99 U. S. 635, 641; *Humes*
v. *Knoxville*, 1 Humph. (Tenn.) 403.  This was the general
law as announced by the Supreme Court of Washington
in its first opinion in the case of *Fletcher* v. *City of Seattle,*

43 Washington, 627, and is the general law of the State as announced by the court's opinion in the instant case. Where the benefits equalled the injury, there was, of course, no injustice in the application of the general rule. But where the damage exceeded the benefits there was an apparent injustice in casting upon such an owner an undue share of the cost of an improvement for the public benefit. This was recognized in *Transportation Co.* v. *Chicago, supra,* where municipal non-liability was said to be due to the fact that in improving its highways the municipality was but the agent of the State, and that as the State could not be sued, its agents were equally immune for improvements authorized by the law of the State, without the consent of the State. But this equity which exists when the benefits are less than the damage affords a strong foundation for legislation requiring compensation in such circumstances. This consideration doubtless led to the legislation of the State requiring compensation for such damage, under which the rights of the plaintiffs in error are asserted.

Whatever may have been the authority of the City of Tacoma under its charter or the general law of the State to take or damage property for the purpose of opening, making, improving or grading its public streets, and its immunity from liability for consequential damages in making an original grading, prior to the legislation found in the two acts of 1893 and 1907, Laws of Washington, 1893, c. 84, p. 189, and Laws of 1907, p. 316, it is plain that the acts in question cover the whole subject of its authority and its liability for taking private property or "damaging" it, in either making, grading or regrading its public streets. The two acts referred to are identical in every essential. The latter is a mere reënactment of the first, by which its provisions are extended to a larger class of municipal corporations.

The act of 1893 was construed and applied by the

Supreme Court of the State in *Fletcher* v. *Seattle*, 43 Washington, 627. The action was by the owner of premises which had sustained damage while the act was in force, in consequence of an original grading. He recovered a judgment, which, upon a first hearing, was reversed by the Supreme Court, that court holding that consequential damages arising from an original grading when the work had been done with due care, was neither a taking nor a damaging of private property within the meaning of the constitution of the State requiring compensation for taking or damaging private property for public purposes. But, upon a rehearing, the attention of the court was for the first time called to the act of 1893, and the contention advanced that the only authority of the city to take or damage the property of the plaintiff for the purpose of grading the street was under that act, and that, by its terms, the city was required to make compensation for damage arising from an original grading. The construction of that act upon facts like those in the present case was thereby directly involved. It was urged that the forty-seventh section did not require compensation for consequential damages, but in answer to this, the court said (p. 633):

"We think the word 'damages' used in the section (the 47th) has the same significance and meaning that it has in other sections of the same act, and that it was used in its broad sense and includes consequential damages. We see no reason why this provision of the law should be segregated from the other provisions, and a different construction placed upon it, or why the provisions of the act in relation to the assessment of the damages should not apply to it as it does to the other sections, and if it does the right of compensation is equally granted.

"It was said that the title of the act shows that it is legislation concerning the exercise of the right of eminent domain, but we think the title is sufficient to cover the

section objected to equally as well as the other sections in the act, and it was evidently the intention of the legislature to pass an act covering the whole subject of opening streets, and of providing methods of making compensation for damages where damages followed. The title not only provides for the exercise of the right of eminent domain, but, also, the taking and damaging of land and property for public purposes, and section 1 of the act empowers the city to condemn and also empowers it to *damage* any land or other property for the purpose of opening streets. Section 2 says, when the corporation authorities of any such city shall desire to condemn land or other property *or damage the same* for any purpose authorized by this act such city shall provide, etc. In this case the city had the power to damage respondents' land, and it was found that it did damage it and it damaged it in a way that it was authorized by § 47 of this act; namely, by establishing a grade on the street upon which their property abutted. And this idea is manifested throughout the act. That the section does not contemplate such damages as are caused by an encroachment or actual trespass upon the lands of the owner, as is suggested by the appellant, is manifest from the language of the section itself which evidently contemplates that the work will be upon the street and not upon the abutting property.

"We are unable to find any more ambiguity in this section than in any other provision of the act, and under its provisions the plaintiffs are entitled to such damages as they can show they have suffered. The question of public policy and expense to the city are questions which are purely legislative."

The judgment of the lower court was thereupon affirmed.

The opinion so construing the act of 1893 was filed in September, 1906. In March, 1907, the act of 1893, then in force, was extended to a larger class of cities and re-

enacted, without any change in any material respect, the first, second and forty-seventh sections being reënacted, the forty-seventh section becoming in the later act § 48. While this act of 1907 was in force, the city directed the grading in question and made or caused the railroad company to make cuts and fills in the street in front of the premises of the plaintiffs in error which resulted in large injury to their property. The city did not provide for compensation for the damage so done by any special assessment upon the property benefited. This brought into effect the provision of the second section requiring the payment of such damage to be made out of the general funds of the city. Payment not having been made as required, the plaintiffs in error brought these actions to recover compensation.

The defense of the city that it was but the agent of the State in improving the highways of the city, and therefore immune, because the State was immune, vanishes in the face of the fact that the State had absolutely coupled authority in the matter with an obligation to make compensation. The city had no authority save that which came from the very act which imposed an obligation. It would seem to need no argument to establish the contention that the obligation to make compensation to these plaintiffs in error could not be destroyed by subsequent legislation.

Neither of the acts provided any remedy for the enforcement of the obligation to make compensation. Both provided that the city might by ordinance arrange for the ascertainment of the damages, and for their collection by special assessment on the property benefited, or within a special assessment district. But the plain requirement of the first and second sections of both acts is that if the city does not so provide for special assessments, that it should make the compensation out of its general treasury. The repealing clause of the act of 1909 does not touch the

general features of the law beyond the provision that the forty-eighth section of the act, which extended the obligation of compensation to original gradings, should not apply to damage arising from such gradings. It is a mistake to say that the act of 1907 gave a remedy where none existed before. What it did was to impose an obligation to compensate abutters injured by an original grading, an obligation which, however meritorious, had no sanction in positive law. The remedy, if the city disregarded the obligation, was that afforded by the common law for the breach of any valid contractual or statutory duty. That was the remedy which was enforced by the Washington court in *Fletcher* v. *City of Seattle, supra.*

Statutes concerning remedies are such as relate to the course and mode of procedure to enforce or defend a substantive right. Matters which belong to the remedy are subject to change and alteration, and even repeal, provided the legislation does not operate to impair a contract or deprive one of a vested property right. If the changing or repealing statute leaves the parties a substantial remedy, the legislature does not exceed its authority. Rights and remedies shade one into the other so that it is sometimes difficult to say that a particular act creates a right or merely gives a remedy. So also a statute, under the form of taking away or changing a particular remedy, may take away an existing property right, or impair the obligation of a contract. That the state court has treated the act of 1907 as merely giving a remedy where none existed before, and the act of 1909 as merely repealing the remedy so given, is plain.

The court below gave a retrospective effect to the amendatory and repealing act by holding that the effect of the repeal was to destroy the right to compensation which had accrued while the act was in force. The obligation of the city was fixed. The plaintiffs in error had a claim which the city was as much under obligation

to pay as for the labor employed to do the grading. It was a claim assignable and enforceable by a common-law action for a breach of the statutory obligation.

The necessary effect of the repealing act, as construed and applied by the court below, was to deprive the plaintiffs in error of any remedy to enforce the fixed liability of the city to make compensation. This was to deprive the plaintiffs in error of a right which had vested before the repealing act, a right which was in every sense a property right. Nothing remained to be done to complete the plaintiffs' right to compensation except the ascertainment of the amount of damage to their property. The right of the plaintiffs in error was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation. *City of Elgin* v. *Eaton*, 83 Illinois, 535; *Healey* v. *City of New Haven*, 49 Connecticut, 394; *Harrington* v. *Berkshire*, 22 Pick. (Mass.) 263; *People* v. *Supervisors*, 4 Barb. (N. Y.) 64, are cases arising under street or highway statutes. The principle has been applied in reference to rights accruing under a variety of statutes when affected by a subsequent change of the law: *Steamship Company* v. *Joliffe*, 2 Wall. 450; *Miller* v. *Union Mills*, 45 Washington, 199; *Grey* v. *Mobile Trade Co.*, 55 Alabama, 387; *Stephens* v. *Marshall*, 3 Pinney (Wis.), 203; *Gorman* v. *McArdle*, 74 S. C. Rep. (N. Y.) 484; *Westervelt* v. *Gregg*, 12 N. Y. 202; *Creighton* v. *Pragg*, 21 California, 115; *State Trust Company* v. *Railroad Company*, 115 Fed. Rep. 367.

Certain cases have been cited in support of the action of the state court, among them *Yeaton* v. *United States*, 5 Cranch, 281. But that was a case of a forfeiture to the United States. The repeal of the statute was held to end the proceeding, although a sentence had been pronounced and was pending upon appeal when the act under which it had been entered was repealed. No private right had

vested, and the Government could abandon its own proceeding if it saw fit at any stage. Another case cited is *Salt Company* v. *East Saginaw*, 13 Wall. 373. For the purpose of encouraging the manufacture of salt the State of Michigan, by a general statute addressed to no particular person or corporation, offered a bounty upon salt produced and exempted from taxation the property engaged in the business. After a time the act was repealed. The claim was that the exemption constituted a contract, and that it could not be repealed without impairing the obligation of the contract. But this court said that the exemption did not constitute a contract and was nothing more nor less than a law dictated by public policy for the encouragement of an industry. So long as the law was in force the State promised the exemption and bounty, but there was no pledge that it should not be repealed at any time. In *Wisconsin & Michigan Ry.* v. *Powers*, 191 U. S. 379, 385, 387, the case was said to point out the distinction between "an exemption in a special charter and general encouragement to all persons to engage in a certain enterprise," and the same principle was applied to an act which provided an exemption to any corporation building a line of railroad north of certain lines of latitude. The court held that it was addressed to no one in particular and constituted a mere announcement of policy not constituting a contract, and was therefore subject to repeal at any time. The case of *Louisiana* v. *New Orleans*, 109 U. S. 285, has been cited. That case merely held that a judgment against the city under a statute for damage to private property inflicted by a mob did not constitute a contract, the obligation of which had been impaired by the repeal of a statute under which the city might have been compelled to levy a special tax for its satisfaction. The case turned upon the distinction between liability for a tort and liability under a contract.

In the instant case the action is neither for a tort, nor

for a penalty, nor for a forfeiture, but for injury to property actually accomplished before the repeal of the law under which the street was graded which required compensation to be made. The right to compensation was a vested property right.

*The judgments must be reversed and the cases remanded for further proceedings not inconsistent with this opinion.*