In the Matter of the Application of THE CITY OF NEW YORK Relative to Acquiring Title to Real Property Required for the Public Parks along the Northerly Line of Public Beach between Beach 110th Street (Eastern Avenue) and Beach 73rd Street (Cedar Avenue), etc., in the Borough of Queens, City of New York.

Supreme Court, Queens County, November 30, 1939.

*Skinner & Bermant* [*Jacob W. Bermant* and *Bernard L. Bermant* of counsel], for the claimants.

*William C. Chanler, Corporation Counsel* [*Arthur H. Indell* and *Ten Broeck S. Imlay, Assistants Corporation Counsel*], for the city of New York.

Lockwood, J.   Title vested in this condemnation proceeding on May 11, 1938.

The second partial final decree was entered November 27, 1939, and provides for interest at the rate of six per cent from date of vesting to July 1, 1939, and at four per cent thereafter.

This motion is made on behalf of several claimants for an order directing the corporation counsel to include in the decree a provision that interest at six per centum per annum be added to each award from the date of vesting up to the date of payment by the city.

By chapter 594 of the Laws of 1939, effective July 1, 1939, the Legislature added section 3-c to the General Municipal Law, which provides that " interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed four per centum per annum."

This court has already held that this statute affects interest on awards in this proceeding accruing only after the statute's effective date, July 1, 1939.   (*Matter of Public Parks* [*Rockaway*], N. Y. L. J. July 12, 1939, p. 92, referred to in *People ex rel. Atlantic Gulf & Pacific Co.* v. *Miller*, Id. Nov. 13, 1939, p. 1597.)

In support of the motion the claimants urge that 1. The statute above quoted does not apply to condemnation.   2. The statute does not apply to this proceeding, wherein title vested prior to July 1, 1939.   3. If the act were intended to apply to this proceeding, it impairs the implied contracts entered into by the city with each owner as of the date of vesting, and unconstitutionally impairs said contracts within the meaning of section 10 of article 1 of the Constitution of the United States.   4. If applicable to this pro-

ceeding, the act deprives the several claimants of just compensation as guaranteed by the Fourteenth Amendment to the Constitution of the United States. 5. The statute either has no meaning and hence is unenforcible, or is unconstitutional by reason of its unlawful delegation of the power to determine the rate of interest paid in a particular proceeding to an unnamed individual or body. (State Const. art. 3, § 1.) 6. The application of the statute to this proceeding will result in the lessening of compensation paid herein, and denies to the claimants the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. 7. In any event, if the statute is applicable to this proceeding, the claimants are entitled to six per cent per annum from May 11, 1938, to either the entry of the final decree or to June 30, 1939, and at a constitutional rate thereafter.

The claimants' contentions will be examined in the order named.

Claimants' first point is based upon the misconception that a claimant whose property is taken in eminent domain does not have an accrued claim against the condemnor. The claimants state that the statute cannot apply unless the owners have accrued claims or obtain a judgment against the city. It has been held that a condemnation award is a judgment within the meaning of that term as used in the Statute of Limitations. (*Donnelly* v. *City of Brooklyn*, 121 N. Y. 9; *Matter of City of New York [Elm Street]*, 239 id. 220.)

The awards in condemnation proceedings tried during the court year from September, 1938, to September, 1939, affecting property in all five counties of New York city, totaled approximately $36,500,000. It is difficult to believe that the Legislature intended to exclude such a large and important class of claims from the provisions of the 1939 statute without definite language indicative of such intention.

Points 2 and 3 are, in substance, that the claimants have a vested right to the fair market value of the property taken plus six per cent interest thereon as constituting their constitutional compensation. That on the vesting date the owners believed their awards would carry interest at the then legal rate of six per cent and made assignments of awards bearing interest at that rate. Further, that some of the mortgages which were liens on the property taken bear interest at six per cent.

The rate of interest prescribed in private contracts between claimants and third parties has no bearing on the rate of interest that must be paid to the claimants either under the statute or as part of their just compensation. The owners have no vested right to future interest at a certain per cent. Their vested right is to payment of the value of the property at the time of taking, with

such additions as will produce the full equivalent of that value if paid contemporaneously with the taking. Interest at a " proper rate " is a good measure by which to ascertain the amount so to be added. (*Seaboard Airline R. Co.* v. *United States*, 261 U. S. 299, 306.) In that case the court approved the application of the legal rate of interest as established by the South Carolina statute.

Claimants argue that their claims for just compensation arise out of implied contract (*Phelps* v. *United States*, 274 U. S. 341), and since statutes existing at the time a contract is made enter by implication into its terms (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361), the act of 1939 reducing the interest rate impairs the obligation of the contracts and is, therefore, unconstitutional.

The rule invoked that statutes existing at the time a contract is made enter into its terms, applies to express contracts and not to the legal fiction called implied or quasi-contracts, imposed by law without the assent of the party bound. In *O'Brien* v. *Young* (95 N. Y. 428) the court said (at p. 432): " But in all cases where the obligation to pay interest is one merely implied by the law or is imposed by law, and there is no contract to pay except the fictitious one which the law implies, then the rate of interest must at all times be the statutory rate. The rate existing at the time the obligation accrued did not become part of any contract, and hence the law which created the obligation could change or alter it for the future without taking away a vested right or impairing a contract."

Furthermore, in the absence of statute, the obligation of the condemnor is only to make just compensation, not to pay interest at some specific rate on the value of the property acquired, if a lesser rate would afford just compensation.

In *Phelps* v. *United States* (*supra*) the court said (at p. 343): " the government is under an implied obligation to make just compensation. That implication being consistent with the constitutional duty of the government as well as with common justice, the owner's claim is one arising out of implied contract."

It may be noted, in passing, that the court there referred to the " owner's claim " against the government, which refutes these claimants' assertion (under point 1) that they have no claims against the city in this proceeding.

Under point 4, claimants urge that when title vests prior to payment, the owner's right to compensation cannot be made to depend on State statutory provisions governing interest; that in the absence of a statute regulating interest, or where the statutory rate does not give the owner full compensation, interest at a " proper " rate must be added to the award; that if the statutory rate of interest gives the

owner more than the Constitution requires, nevertheless, the statutory rate must be applied, and the statutory rate, unless it allows less than just compensation, must be applied by the court since it is part of the vested property rights which accrued at the time of taking and cannot be changed by subsequent legislation.

Claimants' counsel here speaks of " vested property rights which accrued at the time of taking," although under point 1 it is urged that the owners do not have " accrued claims " against the city.

As authority for the several contentions above expressed, claimants cite *Seaboard Airline R. Co.* v. *United States* (261 U. S. 299); *Phelps* v. *United States* (274 id. 341); *People ex rel. Burhans* v. *City of New York* (198 N. Y. 439); *Ettor* v. *City of Tacoma* (228 U. S. 148); *Kahlen* v. *State* (223 N. Y. 383) and *Jacobs* v. *United States* (290 U. S. 13).

The *Seaboard Airline Railway* case (*supra*) holds that the owner's right to just compensation does not depend on contract, express or implied, and cannot be made to depend on State statute, but is a right safeguarded by the Constitution. However, the court approved the payment of interest at the legal rate fixed by the State statute.

*Phelps* v. *United States* (*supra*) holds merely that where property is taken before its value is paid, such value alone is not just compensation, but the owner is entitled to an additional sum which would put him in the same position as if the value had been fixed and paid as of the date of taking, and that the additional payment so required is not a claim for interest within the purview of section 177 of the Judicial Code (U. S. Code, tit. 28, § 284), prohibiting interest on any claim up to the time of the rendition of judgment unless upon a contract expressly stipulating for its payment.

*People ex rel. Burhans* v. *City of New York* (*supra*) holds that where the State delegates its right of eminent domain, it may require the donee to do more than is demanded by the Constitution, but may not permit less to be done.

In *Ettor* v. *City of Tacoma* (*supra*) it was held that a State statute giving compensation for damages caused by change of grade may not be repealed so as to affect rights which had already accrued thereunder.

In *Kahlen* v. *State* (*supra*) the court held that when land was taken in eminent domain the former owner cannot be compelled to take it back, with damages for its detention only.

*Jacobs* v. *United States* (*supra*) merely reiterates that just compensation is the value of the property taken plus such additional amount as will produce the full equivalent of that value if paid contemporaneously with the taking.

Claimants state, correctly, that determination of what constitutes just compensation is a judicial, not a legislative, question (*Monongahela Navigation Co.* v. *United States*, 148 U. S. 312), and contend that four per cent is an unreasonably low rate of interest which works a denial of just compensation to those whose properties were taken.

Under the decisions above mentioned, it is clear that, irrespective of State statutes fixing interest rates, the claimants are entitled to the value of their properties plus such additional amounts as would place them in the same position had payment been made to them at the time their titles were divested.

Except for the bare assertion, claimants show nothing to indicate that four per cent per annum on the val ie of the properties is not an adequate return on such sums or on the properties. It is common knowledge, and the court takes judicial notice, that for several years past the interest yield on sound or so-called legal investments has steadily declined; that many utility and other bond issues yielding four, four and one-half, five and six per cent have been called and refunded at lower rates; that Federal, State and municipal issues in large amounts have likewise been called and paid by the proceeds of new issues bearing interest at from one and one-half to three per cent; that many short term borrowings carry less. Long ago savings banks reduced the rate to depositors from four down so that it has been two per cent for several years. Likewise mortgage interest has been reduced so that the per cent rate on good mortgages is from four to five per cent. Many small new FHA loans are now being made at four and one-half per cent interest. The return realized from equity ownership in real property has been generally much less. It cannot be said, therefore, that interest at four per cent is so inadequate as to deprive the claimants of part of their just compensation. The fact is that for the past two years banks, insurance companies, trustees and other investors have been unable to obtain an average return of four per cent per annum. That the Legislature realized this is obvious by reason of its enactment of the 1939 statute, although it still remains for the court to determine whether four per cent or any lower rate of interest affords just compensation.

Point 5 made by claimants is, that since the statute prescribes that interest shall not exceed four per cent, it may mean any per cent up to four, or no interest at all, and the fixing of the actual rate to be used in a particular case is an unconstitutional delegation of legislative authority to some unnamed body or person.

However, as correctly contended by claimants, the Legislature may not determine what is just compensation, such question being

solely judicial. This court has already determined that the awards to these claimants plus interest thereon, at six per cent from date of vesting up to July 1, 1939, and at four per cent thereafter, constitutes just compensation for the taking of their property. Therefore, any theory of unlawful delegation of legislative authority has no application in the present case.

Claimants' point 6 is that the statute, if applied to this proceeding, denies to them the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. Claimants point out that the statute permits an owner whose property is taken by a railroad company to receive greater compensation than the owner whose property is taken by a municipality.

The obligation of a municipality, when it condemns property, is to pay just compensation. If it does, the fact that a railroad may be required to pay more than the constitutional requirement does not deprive the owner of the equal protection of the laws, as the claimants' counsel has pointed out in his own argument under point 4. (*People ex rel. Burhans* v. *City of New York, supra.*)

The statute is not class legislation, nor may it be construed as discriminatory in its application. The only constitutional question in a particular proceeding is whether the rate of interest therein prescribed affords the owner just compensation. If it does, he has no complaint.

Claimants' contention that the statute may be construed so that under it payment of no interest at all is required is frivolous. Under the above-mentioned authorities cited by claimants they are entitled to some sum, whether called interest or not, in addition to the value of the property taken, as part of their just compensation. This would be so in the absence of statute or even though there were a statute providing no interest be paid, as does section 177 of the Judicial Code (U. S. Code, tit. 28, § 284).

The city contends that where, as in this proceeding, a final decree is entered after July 1, 1939, the interest on the awards should be computed at the rate of only four per cent from date of vesting, even though title vested prior to July 1, 1939.

Section B15-28.0 of the New York City Administrative Code provides as follows:

" Damages: When, how and to whom paid. a. All damages awarded by the court, *with interest thereon* from the date of the filing of the final decree, or if title to the real property acquired shall have vested in the city prior thereto, from the date of such vesting * * * shall be paid by the city to the respective owners mentioned or referred to in the final decree."

Section 370 of the General Business Law provides as follows:

" Rate of interest. The rate of interest upon the loan or forbearance of any money, goods or things in action, except as otherwise provided by law, shall be six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time."

Accordingly, in the absence of any specific provision to the contrary, " with interest " means at the rate of six per cent. Therefore, prior to the 1939 statute the city paid interest at the rate of six per cent without question.

Under the statutes in effect prior to July 1, 1939, interest had accrued to these claimants on their awards at the rate of six per cent. The statute effective July 1, 1939, did not and could not take away the interest already accrued. But it does fix the maximum rate payable by the city after July 1, 1939, at four per cent.

Under present conditions referred to above and on the record in this proceeding interest on the awards at the rate of four per cent from July 1, 1939, affords the claimants, at least, the just compensation to which they are entitled under the Constitution.

Although many constitutional and other questions are urged on this motion, only one simple basic question is involved, viz., whether interest on the awards at six per cent from the time of taking (date of title vesting) up to July 1, 1939, and at four per cent from that time to the date of payment, gives to claimants just compensation and the rights to which they are entitled under the statutes. This court holds that it does.

The financial credit of the city of New York, which suffered along with that of other municipalities between 1929 and 1932, was re-established and for some six years has been A-1, as indicated by the sales of its obligations, short term, last issue at one-half of one per cent, average about .35 per cent; long term, last issue, 2.562 per cent, and for longer term 2.80 per cent. On this showing the city might well ask for the fixation of a lower rate under the law providing for a maximum by the city of four per cent as here interpolated. However, the decree as submitted by the city provides for a rate of four per cent after July 1, 1939, and, as so presented, signed.