**SAGASTIVELZA v. PUERTO RICO HOUSING AUTHORITY.**

No. 4580.

United States Court of Appeals
First Circuit.

March 14, 1952.

Arturo Ortiz Toro, San Juan, P. R., for appellant.

Jaime J. Saldaná, Asst. Atty. Gen. of Puerto Rico (Victor Guterrez Franqui, Atty. Gen. of Puerto Rico, on brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

This litigation has a rather lengthy judicial history which it may be helpful to summarize.

On December 8, 1944, the Puerto Rico Housing Authority filed in the District Court of Arecibo, Puerto Rico, a complaint seeking the condemnation of certain property belonging to appellant which the Authority declared its intention to use for the development of a low-rental housing project. Three days later, upon the filing of a declaration of taking and deposit of the estimated amount of just compensation by the Housing Authority, the district court entered an *ex parte* order pursuant to § 5(a) of the Eminent Domain Act of March 12, 1903, as amended by § 3 of Act No. 19, Laws P. R., 2d and 3d Special Sessions 1942, pp. 88–92, vesting title to the property in the Housing Authority. The proper compensation and any defenses which might be interposed to the taking were left to be determined in the pending action. Section 5(a) is very similar to the Federal Declaration of Taking Act, 46 Stat. 1421, 40 U.S.C.A. § 258a et seq.

Thereafter the condemnee filed her answer alleging, alternatively, that the taking was not authorized by law and that just compensation greatly exceeded the amount tendered by the condemnor.

On March 20, 1947, the cause not yet having come on for trial, the condemnee filed a motion in the district court alleging that the property had not been utilized by the condemnor and that the condemnee was, therefore, entitled to a judgment restoring title to her in accordance with § 7 of the Eminent Domain Act, as amended, Code of Civil Procedure (1933 Ed.) § 305. The section relied upon reads as follows: "In all cases of condemnation, sale, transfer or voluntary alienation of property for the performance of a work of public utility, whenever such work is not completed within the time fixed by the concession or franchise, or, in case no time is so fixed, within the term of six months, counting from the date on which the final decision ordering the condemnation was rendered, the party dispossessed or who voluntarily sold, transferred or encumbered his right of ownership shall have a right of action to recover the property condemned, returning the amount received."

This motion was granted, but the judgment of the district court restoring the property to the condemnee was reversed on appeal. The Supreme Court of Puerto Rico held that the interlocutory order entered pursuant to § 5(a) of the Eminent Domain Act was not a "final decision" within the intendment of § 7, and its decision was affirmed here. 1 Cir., 1949, 171 F.2d 563.

After remand the case was transferred to the newly created Court of Eminent Domain in accordance with § 4 of Act No. 223 of May 15, 1948, Laws P.R.1948, pp. 778–80. It ultimately came to trial on January 27, 1949, and on June 6, 1949, judgment on the merits was entered declaring the property definitively condemned and fixing the amount of compensation. Appeals from this judgment to the insular Supreme Court

were taken by both parties and, while these were pending, the condemnee, again invoking § 7 of the Eminent Domain Act, filed in the Supreme Court a motion to revest title, on the theory that the judgment of June 6, 1949, was the final decision contemplated by that section, and that six months had elapsed since it had been entered. The Supreme Court overruled the motion, holding, first, that it did not have original jurisdiction to consider the questions thus raised, and, second, that the motion could not be regarded as an integral part of the pending appeals in that it presented issues entirely distinct from those as to which review was pending. Puerto Rico Housing Authority v. Sagastivelza, 71 P. R. R. (May 23, 1950).

Thereafter the proceeding out of which the present appeal arises was initiated: On June 3, 1950, appellant filed in the Court of Eminent Domain a petition for restoration of property, making the same allegations which had been the basis of the motion denied in the Supreme Court on jurisdictional grounds. The Court of Eminent Domain dismissed the petition, holding that it too lacked jurisdiction. On appeal the Supreme Court of Puerto Rico declared that the jurisdiction of the Court of Eminent Domain had been properly invoked but affirmed the dismissal of the petition on the substantive ground that no cause of action had been stated. It is this decision which we are asked to review, our jurisdiction being invoked under 28 U.S.C. § 1293.

The Supreme Court rested its decision primarily on the ground that § 7 of the Eminent Domain Act had been repealed by § 3 of Law No. 105 of May 7, 1948, Laws P.R.1948, p. 240, enacted after the Housing Authority had commenced the condemnation proceeding and after the *ex parte* order of the district court entered on the filing of the declaration of taking, but before the case had come to trial, and of course before the district court had entered its definitive judgment of condemnation in 1949. Although the repealing statute is specific and unconditional in terms, appellant argues that in holding as it did the Supreme Court misconceived the effect of two so-called "saving statutes". The

opinion of the Supreme Court of Puerto Rico makes no mention of either of these statutes and we do not know whether their effect upon the litigation was argued below. Nevertheless we must treat the Supreme Court's decision that § 7 does not apply in this case as an implicit holding that the saving statutes were not apposite.

One of the saving statutes, § 386 of the Political Code of Puerto Rico, patterned closely after 1 U.S.C.A. § 109, 61 Stat. 635, provides: "The repeal of any statute by the Legislative Assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

■ While the term "liability" may render this section of the Political Code apt in certain civil as well as in criminal actions (see Puerto Rico Ilustrado, Inc. v. Buscaglia, 64 P.R.R. 870, 907 (1945); Hutton v. Autoridad sobre Hogares de la Capital, D. C. D.P.R.1948, 78 F.Supp. 988; Hertz v. Woodman, 1910, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001), it is difficult to see how the section could have any bearing on the case at bar. Certainly the Housing Authority had not incurred any "liability" to appellant under § 7 of the Eminent Domain Act prior to its repeal, nor had any "penalty" or "forfeiture" been incurred. Under the clear language of § 7, a liability to reconvey the property could arise only upon the Housing Authority's failure to use the property within six months after the final judgment had been entered in the condemnation proceeding, and the section was repealed before the condemnation proceeding had even come to trial. Compare Hutton v. Autoridad sobre Hogares de la Capital, supra.

The other saving statute upon which appellant relies is § 3 of the Civil Code of Puerto Rico (1930), which states: "Laws shall not have a retroactive effect unless they expressly so decree. * * *"

■ This section is amenable to construction, its breadth depending upon the

scope that is given to the rather pliable concept of retroactivity. Conceivably the section could be read so broadly as to afford appellant the aid she is seeking. Section 7 might be considered as being retroactive in its effect upon appellant in that it deprived her of a possibility, which was open under existing law, that even though final judgment of condemnation might be taken against her, she might nonetheless reacquire the land, pursuant to the statute, in case the Housing Authority should fail to complete the proposed public project within the time limited. Yet it would be manifestly no less reasonable to take the more moderate view that the repeal of § 7 did not have a prohibited retroactive effect as to appellant, because at the time of the repeal she had not acquired any vested right to restoration of the property, but had, at most, only a hope or possibility of such reverter. See Torres v. Winship, 56 P.R.R. 665, 671 (1940). Since the judgment now under review is consistent with this not unreasonable interpretation of § 3 of the Civil Code, we are unable to say that the judgment was "inescapably wrong" as a matter of statutory construction. De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

■■■ But appellant argues that such a construction is constitutionally unpermissible in that to deny her the benefit of § 7 is to deprive her of due process of law, since she is thereby being subjected to unreasonable retrospective legislation. Were it not for the earnestness with which this claim is asserted we would be disposed to regard it as frivolous. The usual formulation of the rule with respect to retroactive civil legislation is that such legislation is constitutionally objectionable when it deprives a person of a completely vested right. Ettor v. City of Tacoma, 1913, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Western Union Tel. Co. v. Louisville & N. R. R. Co., 1922, 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; Crane v. Hahlo, 1922, 258 U.S. 142, 147, 42 S.Ct. 214, 66 L.Ed. 514; Coombes v. Getz, 1932, 285 U.S. 434, 442, 52 S.Ct. 435, 76 L.Ed. 866. See Rottschaefer, Constitutional Law, p. 548 (1939). This statement is, perhaps, deceptively simple, for

the line which separates the fair and unobjectionable from the unfair and unconstitutional may, in some circumstances, be difficult to plot. Compare Forbes Pioneer Boat Line v. Board of Commissioners, 1922, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647, with Tiaco v. Forbes, 1913, 228 U.S. 549, 33 S.Ct. 585, 57 L.Ed. 960. There can, however, be no serious question here: The interest this appellant had acquired under § 7 of the Eminent Domain Act, if, indeed, she can be said to have acquired any interest whatsoever, fell clearly into that category of inchoate possibilities which the legislature may permissibly terminate. Neither the filing of the complaint by the Housing Authority nor the ex parte order of the district court on the filing of the declaration of taking, the only two germane events which occurred before § 7 was repealed, can be thought of as having vested in appellant a right to reacquire the property, for § 7 could come into play only six months after the cause had been heard and determined on the merits and final decision entered, and then only if the Housing Authority had failed to utilize the property. We see nothing unfair in the repealing act, which deprived appellant, before the condemnation case had come to trial, of the possible benefits of § 7. She did not change her position in reliance upon the section: She did not voluntarily convey the property in the assurance that she could reacquire it if the condemnor did not complete the public work within the statutory period. Upon the contrary, she vigorously contested the condemnation with every weapon at her command. Indeed, appellant was not even deprived of a warranted expectation that § 7 might work in her favor, for at the date of the repeal, so far as the record discloses, there was nothing to indicate that the Housing Authority's plans for the property would not be timely perfected.

The opinion of the insular Supreme Court which is before us relied also upon the additional ground that, even if § 7 were applicable to this case, the conditions which that section makes precedent to the right to restoration of title had not as yet occurred. The court construed the "final de-

cision" intended by § 7 as one from which no appeal could be taken. Since an appeal was pending from the judgment of the Court of Eminent Domain which had declared the land condemned, that judgment was not considered by the court below to be a final decision within the special meaning of § 7.

■ This is a reasonable interpretation of § 7 with which we cannot interfere. De Castro v. Board of Commissioners, supra. The phrase "final decision" is not a term of art having only a single, unvarying meaning; the interpretation put upon it must be suited to the context in which it is used. The "final decision" from which an appeal may be taken, as the phrase is used in statutes defining appellate jurisdiction, must necessarily be the decision of a lower tribunal. See Catlin v. United States, 1945, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911; Jiménez v. Jones, 1 Cir., 1952, 195 F.2d 159. The "final decision" contemplated by § 7, on the other hand, may more plausibly be regarded as the judgment of condemnation from the moment it becomes invulnerable to possible upset on appellate review. Otherwise the condemning authority, in order to avoid loss of the property for lack of use while appellate litigation is pending, might find it necessary to proceed with the public work even though its right to condemn had not been finally adjudicated. The history of this very case is persuasive of the reasonableness of the interpretation adopted.

■ The suggestion is made by appellant that, when at the earlier stage the Supreme Court of Puerto Rico reversed the order of the District Court of Arecibo restoring the property, the holding was, in substance, that the "final decision" intended by § 7 was the decision on the merits by the court of first instance. It is asserted that to hold to the contrary now would disregard the law of the case. Certain language in the insular Supreme Court's earlier opinion may be subject to the construction sought to be placed upon it. But there is also language pointing the other way. The obvious explanation for the lack of precision is that the question then before the court was solely whether the *ex parte* order entered when

the declaration of taking was filed, at the very outset of the litigation, was a "final decision" under § 7. It being unnecessary then to discriminate between a judgment from which an appeal might still be taken and one either appealed and affirmed or no longer capable of being appealed, the court's attention was not focused upon the present problem. The law of the case, to whatever extent an appellate court may hold itself bound by it, see White v. Higgins, 1 Cir., 1940, 116 F.2d 312, has to do only with issues considered and passed upon in an earlier stage of the litigation.

The judgment of the Supreme Court of Puerto Rico is affirmed.