### NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,

v.

### The STATE OF NEVADA, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, and Roland D. Westergard, Director, in his Official Capacity, Division of Environmental Protection, and L.H. Dodgion, Administrator, in his Official Capacity, the County of Washoe, District Health Department, and James Begbie, Acting District Health Officer, in his Official Capacity, and Carl R. Cahill, Director of Environmental Health Services, in his Official Capacity, and Mills Lane, Washoe County District Attorney, in his Official Capacity, Defendants.

No. CV–N–90–017–ECR.

United States District Court, D. Nevada.

Oct. 15, 1991.

As Amended Dec. 10, 1991.

Mills Lane, Dist. Atty., Reno, Nev., for Washoe County Dist. Health Dept., James Begbie, Carl Cahill, Mills Lane.

Lawrence M. Mann, Washington, D.C., and Bill Bradley, Reno, Nev., for Brotherhood of Maintenance of Way Employees.

## ORDER DECLARATORY JUDGMENT AND PERMANENT INJUNCTION

EDWARD C. REED, Jr., Chief Judge.

The plaintiff National Railroad Passenger Corporation (hereinafter "Amtrak") filed its complaint (document # 1) on January 17, 1990, requesting declaratory relief and preliminary and permanent injunctions against the State of Nevada, and some of its subdivisions, and against the County of Washoe, and some of its subdivisions. Amtrack alleges that it operates intercity rail passenger service through the state of Nevada, and that in doing so, its trains pass over rivers and streams within the state. The waste disposal systems on the trains are such that, in most of the passenger cars, Amtrak cannot control where or when the waste is discharged from the cars. Thus, raw human waste is discharged into Nevada's rivers and streams from the toilet facilities of the Amtrak cars. As is stated in the plaintiff's complaint,

> Amtrak normally operates two different types of passenger cars in Nevada. Its most commonly used passenger car in Nevada is the Superliner. The toilet facilities in Superliner cars involve a system which temporarily retains waste matter in small tanks on each car, macerates the waste, and then discharges it automatically onto railroad rights-of-way when the train has reached a certain speed, normally about twenty-five (25) mph. The other type of car is the older Hi–Level car, which has been in service since before Amtrak was formed in 1971. The toilets in Hi–Level equipment discharge waste directly onto the railroad rights-of-way without additional treatment. Amtrak trains on the Northern and Southern Routes [through Nevada] will typically have one Hi–Level car and several Superliner cars in the consist.

Dan C. Bowen of Lionel Sawyer & Collins, Reno, Nev., and Jeffrey Hunter Moon, National Railroad Passenger Ass'n., and T. Michael Kerrine, Washington, D.C., for National Railroad Passenger Corp.

Brian McKay, Atty. Gen. of Nevada by Brian Chally, Deputy Atty. Gen., Div. of Environmental Protection, Carson City, Nev., for State of Nev.

Plaintiff's Complaint, (document # 1), page 4, lines 16–28.

On approximately September 21, 1989, the State of Nevada's Department of Conservation and National Resource, Division of Environmental Protection issued a Finding of Alleged Violation against Amtrak for discharging waste into the rivers and streams. (Discharge of pollutants into state waters is a violation of NRS 445.221.) Complaint (document 1), page 5, lines 17–21. The following day, Amtrak was ordered to immediately halt discharging human waste from the passenger cars of trains when such trains were adjacent to or over state waters. Amtrak was also ordered to show cause as to why the Division of Environmental Protection should not seek penalties and other appropriate relief from Amtrak. Complaint (document # 1), page 5, lines 23–28.

Amtrak is seeking a declaratory judgment that the State of Nevada and Washoe County statutes are preempted by federal law and are therefore void as to Amtrak. Additionally, Amtrak is seeking a temporary and a permanent injunction restraining the defendants from enforcing the state and county statutes against Amtrak, its officers, agents and employees. Complaint (document # 1), page 9, lines 2–24.

The State and the County both answered the complaint, and counterclaimed against Amtrak seeking an injunction preventing Amtrak from discharging untreated human waste and for costs, damages, and penalties. (Documents ## 10, 11, and 12). The Brotherhood of Maintenance of Way Employees (hereinafter "BMWE") was permitted to intervene (document # 54) and filed an answer and counterclaim (document # 34) requesting an injunction preventing Amtrak from discharging raw human waste onto its tracks and rights of way, a declaratory judgment that the actions of Amtrak create a public and private nuisance, and compensatory and punitive damages. (The members of the BMWE are often sprayed with the raw human waste if they are working on the tracks or railroad rights of way when an Amtrak train passes by.)

When allowing the BMWE to intervene, this Court also ordered additional briefing on the issue of whether the National and Community Service Act of 1990, Pub.L. No. 101–610, 104 Stat. 3127 (1990), (which amends section 306(i) of the Rail Passenger Service Act to explicitly exempt Amtrak from all federal, state, and local laws pertaining to waste disposal from trains) preempts the state and local laws under which this lawsuit was filed. (document # 54).

The County of Washoe filed its brief (document # 55) on January 7, 1991. Amtrak filed its brief (document # 56) on January 8, 1991. The State of Nevada filed its brief (document # 57) on January 14, 1991. The BMWE filed its brief (document # 61) on January 18, 1991. BMWE filed a response (document # 63) to Amtrak's brief. Amtrak filed a response (document # 64) to all the defendants' briefs on January 23, 1991. The County of Washoe filed a reply (document # 65) to Amtrak's brief on January 23, 1991. Amtrak filed supplemental points and authorities (document # 68) in response to all defendants' briefs on April 16, 1991.

Amtrak filed a Motion for Summary Judgment (document # 69) on April 19, 1991. The County filed its Opposition to the Motion for Summary Judgment (document # 70) on May 13, 1991. BMWE filed its Opposition to the Motion for Summary Judgment (document # 71) on May 14, 1991. The State of Nevada filed its Opposition to the Motion for Summary Judgment (document # 72) on May 16, 1991. Amtrak filed its Reply to the Defendants' Opposition to the Motion for Summary Judgment (document # 74) on June 7, 1991. Thus, all court ordered briefings have been filed, and the Motion for Summary Judgment is ripe for this Court's decision.

## SUMMARY JUDGMENT

Summary judgment is granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(c). One of the most important goals of summary judgment is to avoid wasting resources and time where a trial would be a mere formality. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir.1975) *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

The party seeking summary judgment bears the responsibility of demonstrating to the court the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986).

For summary judgment purposes, material facts are those that could affect the outcome of the suit under the applicable substantive law. An issue is genuine if the evidence could support a finding by a reasonable jury in favor of the non-moving party. *Anderson,* at 248.

■ The inferences to be drawn from the facts set forth in the motion for summary judgment and related materials must be viewed in the light most favorable to the opposing party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## DISCUSSION

There are no material facts at issue in this case. The plaintiff and defendants all agree on the facts as outlined above. It is a question of law—whether Nevada and Washoe County's health and safety statutes are preempted by federal law—which is at issue. Thus, this is a proper case for a motion for summary judgment.

*1. Does The National and Community Service Act of 1990, Pub.L. No. 101–610, 104 Stat. 3127 (1990) preempt state and local laws pertaining to the disposal of human waste and Amtrak?*

■ Federal law may preempt state law in any of three ways: (1) a statute by its express terms preempts state law; (2) Congress indicates an intent to occupy an entire field of regulation; or (3) the state law actually conflicts with federal law, either (a) because compliance with both state and federal law is impossible, or (b) because the state law stands as a obstacle to congressional purpose. *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2522, 81 L.Ed.2d 399 (1984).

The National and Community Service Act was passed into law during the pendency of this case, and the parties have fully briefed the effect the new statute has on this litigation. The pertinent section of the Act is codified at 45 U.S.C. section 546(i), and reads as follows:

> The provisions of section 361 of the Public Health Service Act (42 U.S.C. 264) and other Federal, State and local laws shall not apply to waste disposal from railroad conveyances operated in intercity rail passenger service. New intercity rail passenger cars manufactured on or after October 15, 1990, shall be built to provide for the discharge or [sic] human wastes only at servicing facilities. The Corporation shall retrofit those of its intercity rail passenger cars that were manufactured after May 1, 1971 and before October 15, 1990, with human waste disposal systems that provide for the discharge of human wastes only at servicing facilities. Subject to the appropriation of funds, (1) such retrofit program shall be completed within not later than October 15, 1996, and (2) all cars that do not provide for the discharge of human waste only at servicing facilities shall be removed from service after such date. The United States district courts shall have original jurisdiction over any civil actions brought by the Corporation to enforce the exemption conferred hereunder and may grant equitable or declaratory relief as requested by the Corporation.

Section 601(c) of Pub.L. 101–610 provides that "[t]he amendments made by subsection (a) [which amends subsection (i) of 45 U.S.C. section 546] shall take effect as if enacted on February 5, 1976."

Thus, Congress has evidenced, by express terms, its clear intent to preempt any state or local laws dealing with Amtrak's discharge or treatment of human waste.

Additionally, Congress recognized that passage of this statute would void pending litigation which had been brought against Amtrak for its human waste disposal practices in Florida on state littering charges. *See* Congressional Record—Senate, October 16, 1990 at 15388 attached as Exhibit 2 to the plaintiff's Memorandum of Points and Authorities in Further Opposition to BMWE's Motion to Dismiss (document # 56). Clearly, Congress's intent was also to preempt *any* state and local action against Amtrak for its human waste disposal practices.

*2. Do the defendants have a vested property interest in this cause of action, which vested interest cannot be taken by congressional action without due process of law?*

The defendants contend that the express retroactivity of this statute amounts to an unconstitutional taking of defendants' property interests in this law suit. (See documents ## 55, 57, and 61.) The defendants claim that their causes of action against Amtrak amount to a vested property interest in this law suit. They further argue that Congress cannot pass legislation which deprives them of that vested property interest without affording them some sort of due process. Thus, the defendants claim, this new legislation cannot be applied to this action.

In order for a "taking" to have occurred in this instance, the defendants must have had a vested right in this action, and, prior to the passage of the National and Community Service Act of 1990, federal law must not have preempted state and local human waste disposal statutes which affected the operation of Amtrak trains.

The United States Supreme Court has held that a cause of action may afford some sort of property interest. *See Ettor v. City of Tacoma*, 228 U.S. 148, 156, 33 S.Ct. 428, 430, 57 L.Ed. 773 (1913) ("The right of the plaintiffs in error was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation."); *Logan v. Zimmerman*

*Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982) (a cause of action may be a "species of property"). However, the Ninth Circuit has held that "a party's property right in any cause of action does not vest 'until a final *unreviewable* judgment is obtained.'" *Grimesy v. Huff*, 876 F.2d 738 (9th Cir.1989) *cert. denied*, —— U.S. ——, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1990) citing *In re Consolidated United States Atmospheric Testing Litig.*, 820 F.2d 982, 989 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988) (emphasis added by the court.) *See also Austin v. City of Bisbee*, 855 F.2d 1429, 1435–36 (9th Cir.1988) (the plaintiff's right in his cause of action is not perfected until final judgment.) The First Circuit has held that "[n]o person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." *Hammond v. United States*, 786 F.2d 8, 12 (1st Cir.1986) (citations omitted.) Quoted with approval by the Ninth Circuit in *U.S. Atmospheric Testing*, 820 F.2d at 989. Additionally, the Eleventh Circuit held that there was no Fourteenth Amendment violation in the retroactive application of a twelve year statue of repose that barred the plaintiffs' relief. *Eddings v. Volkswagenwerk, A.G.*, 835 F.2d 1369, 1373 (11th Cir.), *cert. denied*, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988).

■ Because this action has not yet reached final judgment, the defendants have no vested property interest in it. Therefore, there has been no unjust taking as prohibited by the due process clause of the Fifth Amendment. Because the defendants have no vested interest in this action, the Court need not reach the question of whether federal law prior to the passage of the National and Community Service Act of 1990 preempted state and local laws which dealt with the disposal of human waste, and which affected the operation of Amtrak trains.

One additional note may be made here. The Ninth Circuit has stated that Congress can legitimately affect pending litigation by enacting legislation. The Court said in

*Stop H–3 Ass'n v. Dole,* 870 F.2d 1419, 1432 (9th Cir.1989) that

there is authority to support Congress' ability to moot a pending controversy by enacting new legislation. *See Friends of the Earth v. Weinberger,* [562 F.Supp. 265, 270 (1983) ] ("Through the passage of legislation which governs the lawsuit, Congress can effectively moot a controversy notwithstanding its pendency before the courts.") There is thus, by itself, nothing illegitimate about a decision to enact legislation exempting a particular project, the subject of pending litigation, from the requirements of existing statutes.

In *Stop H–3* the plaintiffs had sued to enjoin the building of a highway in Hawaii, alleging that federal environmental impact requirements had not been met. During the pendency of the litigation, Congress passed a statute specifically exempting that particular section of the highway from the federal environmental impact requirements. The court upheld Congress' ability to do this, and upheld the district court's dismissal of the complaint and cancellation of the temporary injunction.

■ Thus, following the *Stop H–3* court's reasoning, Congress has the ability to pass a statute which exempts Amtrak from local health and safety regulations, even though passage of such legislation has the effect of mooting the ongoing litigation involved here. Accordingly, summary judgment is proper in this matter.

### 3. Conclusion

It is with great reluctance that this Court grants the plaintiff's motion for summary judgment. Amtrak's filthy practice of dumping raw human sewage into the drinking and irrigation waters of this state, and onto the workers maintaining the railroad tracks is abhorrent in this modern day society. While this practice may have been acceptable in the 19th century when the train system was first started, one would hope that today's society would demand better of its transportation systems. However, Congress has clearly tied this Court's hands, and prevented it from requiring that Amtrak comply with health and sanitation standards needed and promulgated by the State of Nevada.

IT IS, THEREFORE, HEREBY ORDERED that the plaintiff's Motion for Summary Judgment (document # 69) is GRANTED.

IT IS FURTHER ORDERED that Amtrak's request for a DECLARATORY JUDGMENT (contained in the Complaint, document # 1) that the Nevada and Washoe County statutes, regulations and ordinances which apply to the disposal of human waste from National Railroad Passenger Service ("Amtrak") trains are void is hereby GRANTED.

IT IS FURTHER ORDERED that Amtrak's request for a PERMANENT INJUNCTION (contained in the Complaint, document # 1) is hereby GRANTED. The defendants are hereby RESTRAINED AND ENJOINED from enforcing the Nevada and Washoe County statutes, regulations or ordinances which apply to the disposal of human waste from Amtrak trains as against the National Railroad Passenger Service ("Amtrak") and/or its officers, agents and employees.

IT IS FURTHER ORDERED that the clerk shall enter judgment accordingly.