**GREYHOUND FOOD MANAGEMENT, INC., et al., Plaintiffs,**

v.

**CITY OF DAYTON, et al., Defendants.**

**FEDERAL INSURANCE COMPANY, et al., Plaintiffs,**

v.

**CITY OF DAYTON, et al., Defendants.**

**Nos. C-3-84-997, C-3-85-13.**

United States District Court, S.D. Ohio, W.D.

Nov. 26, 1986.

Robert P. Bartlett, Thomas H. Pyper, Dayton, Ohio, for defendant R.E. Holland.

William H. Thornburgh, Dayton, Ohio, for defendant C.E. Schultz.

James J. Gilvary, Dayton, Ohio, for defendant Bowser.

William L. Millard, Theodore M. Munsell, Columbus, Ohio, for defendant Meuser.

John E. Gotherman, Cleveland, Ohio, for amicus curiae Ohio Municipal Leagues.

Thomas F. Green, Dayton, Ohio, for plaintiffs.

Gregory C. Gibson, Dayton, Ohio, for plaintiffs in Case No. C–3–85–13.

Neil F. Freund, Jane M. Lynch, Dayton, Ohio, for defendant City of Dayton.

DECISION AND ENTRY OVERRULING DEFENDANT CITY OF DAYTON'S MOTION FOR SUMMARY JUDGMENT (DOC. # 85) AND GRANTING CROSS MOTIONS FOR SUMMARY JUDGMENT OF PLAINTIFFS FEDERAL INSURANCE CO. (DOC. # 147) AND INDIANA INSURANCE CO. (DOC. # 148) AND CROSS–CLAIM PLAINTIFF CINCINNATI INSURANCE CO. (DOC. # 149)

RICE, District Judge.

This case is before the Court on Defendant City of Dayton's Motion for Summary Judgment (Doc. # 85) and on Cross Motions for Summary Judgment of Plaintiffs Indiana Insurance Company (Doc. # 148) and Federal Insurance Company (Doc. # 147) and of Cross-Claim Plaintiff Cincinnati Insurance Company (Doc. # 149).

Defendant City of Dayton's Motion for Summary Judgment argues that Substitute Senate Bill No. 297 (enacted into law effective April 30, 1986) bars claims under subrogation provisions of insurance or other contracts against municipalities, and accordingly that the claims against it of

Indiana, Federal and Cincinnati Insurance Companies ("the insurers") are barred. The insurers, however, argue that the statute should not be read to bar their claims; however, they claim, if it is so read, that it is unconstitutional.

For the reasons set forth below, the Court rejects the insurers' argument that the statute is not applicable to their claims and their arguments that it violates Article II, Section 28 of the Ohio Constitution (prohibiting the passage of retroactive laws or laws impairing the obligation of contract) and the obligation of contract clause of article I, section 10 of the United States Constitution. Ruling further, however, for the reasons set forth below, the Court finds that the statute does violate the equal protection, due process, and takings provisions of the United States Constitution and the due course provision of the Ohio Constitution. Accordingly, Defendant City of Dayton's Motion for Summary Judgment is overruled, and the insurers' cross motions for summary judgment are granted.

## I. BACKGROUND

This case arises out of flooding at Sinclair Community College in Dayton, Ohio, in January, 1983, which Plaintiffs allege was caused, *inter alia*, by defective water pipes for which Defendant City of Dayton is liable. On December 11, 1984, Plaintiffs Greyhound Food Management, which operated a food service at Sinclair Community College, and Indiana Insurance Company, Sinclair Community College's insurer, which had become subrogated to Sinclair's interest by virtue of payment under the policy of insurance, filed suit against the City of Dayton and various other Defendants for the damages caused by that flooding. On January 9, 1985, Leviton Construction Company and Federal Insurance Company, Leviton's insurer, filed suit against the City of Dayton and other Defendants for damages caused by the same flooding (Case No. C-3-85-13). On January 18, 1985, co-Defendant C.E. Schulz and Son, insured by Cincinnati Insurance Company, filed a cross-claim against the City of

Dayton for similar damages in the captioned cause. Those two lawsuits were consolidated for pretrial purposes by an Entry of this Court on March 20, 1985. The claims of Plaintiffs Indiana, and Federal and the cross-claim Plaintiff Cincinnati are based upon rights assigned to them by Sinclair Community College, Leviton Construction Company, and C.E. Schulz and Son, respectively, under subrogation clauses in those parties' insurance contracts.

During the pendency of this consolidated action, on March 27, 1986, the Ohio legislature passed Substitute Senate Bill No. 297, which became effective on April 30, 1986. Section 5 of that statute provides:

This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for the necessity is that, unless the collateral source provisions contained in Division (B) of Section 2744.05 of the Revised Code that apply to judgments obtained on or after November 20, 1985, against political subdivisions of this state in connection with causes of action for injury, death, or loss to persons or property caused by acts or omissions associated with governmental or proprietary functions, are immediately made applicable to causes of action against political subdivisions that arose before that date, that are not barred by a statute of limitations, and that were not the subject of a commenced trial prior to that date, situations will arise after November 20, 1985, in which some political subdivisions are required to pay the entire amount of judgments against them despite the fact that the plaintiffs involved already have been entirely or partially compensated from insurance or other collateral benefits for injury, death or loss experienced. Therefore, this act shall go into immediate effect.

Ohio Revised Code § 2744.05(B), as amended November 20, 1985, provides:

If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of

insurance or any other source, the benefits shall be disclosed to the court, and the amount of benefits shall be deducted from any award against a political subdivision recovered by the claimant. *No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits.* Nothing in this division shall be construed to limit the rights of a beneficiary under a life insurance policy or the rights of sureties under fidelity or surety bonds.

(emphasis added)

Defendant City of Dayton argues that Ohio Revised Code § 2744.05(B), made retroactive by Senate Bill No. 297 to all cases not tried before November 20, 1985, bars the claims assigned by the subrogation clauses of insurance contracts of the insurers.

## II. DISCUSSION

As indicated above, the insurers assert a number of reasons in support of their argument that Section 2744.05 and Substitute Senate Bill No. 297 do not bar their claims against the City of Dayton:

(1) The statutory language does not apply to the claims of these insurers against the City of Dayton;

(2) Retroactive application of § 2744.05(B) is invalid as a violation of Article II, Section 28 of the Ohio Constitution, prohibiting retroactive laws or laws impairing the obligation of contract;

(3) Section 2744.05 is invalid as impairing the obligation of contract in violation of Article I, Section 10 of the United States Constitution and of Article II, Section 28 of the Ohio Constitution;

(4) Section 2744.05(B) is invalid as a violation of the equal protection clause of the fourteenth amendment of the United States Constitution;

(5) Retroactive application of the provisions of Section 2744.05(B) is invalid as a violation of the due process clause of the fourteenth amendment of the United

States Constitution and the due course clause of the Ohio Constitution; and

(6) Retroactive application of Section 2744.05(B) is invalid as an illegal taking under the taking clause of the fifth amendment of the United States Constitution as made applicable to the State of Ohio by the fourteenth amendment.

The Court will consider these arguments in order.

(A) *Meaning of the Statutory Language.*

The insurers' first argument against the application of O.R.C. § 2744.05(B) and Substitute Senate Bill No. 297 to bar their claims against the City of Dayton, is that those statutes read together do not apply the bar against actions "under a subrogation provision in an insurance or other contract" retroactively. Specifically, these Plaintiffs argue that Substitute Senate Bill No. 297 makes retroactive only the first sentence of § 2744.05(B), which provides: "If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source ... the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant." Thus, under these Plaintiffs' construction of Section 5 of Substitute Senate Bill No. 297, a claimant would have to deduct the amount of insurance coverage he or she holds from the amount of any award against a municipality, but the insurance company could then proceed against that municipality on a subrogated claim for that amount.

■ The Court notes, however, that the Ohio legislature in enacting Section 5 of Substitute Senate Bill 297 was concerned that "political subdivisions are required to pay the entire amount of judgments against them despite the fact that the plaintiffs involved have already been entirely or partially compensated from insurance or other collateral benefits for injury, death, or loss experienced." The Ohio legislature therein does not seem concerned with the limited issue of double recovery by plaintiffs, but rather with the possibility

that municipalities will have to pay the entire amount of damages when insurance coverage is available. If insurers can proceed against municipalities on claims under the subrogation clauses of their insurance contracts, the net liability of municipalities would be the same with Substitute Senate Bill No. 297 as without it. Thus, the Court must conclude that the only reasonable reading of Section 5 of Substitute Senate Bill No. 297 is that the *entire* provisions of § 2744.05(B) are retroactively applicable.

■ Plaintiffs also argue that § 2744.05(B) is not applicable to them because, in addition to a right of subrogation under the provisions of their insurance contracts, they also have a right of subrogation by operation of law. This argument too must be rejected. It is uncontroverted that Indiana paid Sinclair $3.5 million because of its obligations under the insurance contract. Reading the statute reasonably, the Court must conclude that the assignment of a cause of action prompted both by this payment and by the terms of an insurance contract is of the type that the Ohio legislature intended to cover in enacting O.R.C. § 2744.05(B).

In sum, the Court must conclude that Substitute Senate Bill No. 297 makes retroactive all provisions of O.R.C. § 2744.05(B), and that those provisions bar the insurers' claims against the City of Dayton, unless the provisions in question are deemed unconstitutional and, therefore, unenforceable.

### (B) *Retroactivity and Article II, Section 28 of the Ohio Constitution.*

The insurers' also argue that retroactive application of O.R.C. § 2744.05(B), as is required by Section 5 of Substitute Senate Bill No. 297, violates Article II, Section 28 of the Ohio Constitution, and is therefore invalid. While the Court agrees that Substitute Senate Bill No. 297 has the effect of making O.R.C. § 2744.05(B) retroactively applicable, it also concludes that that retroactive application is not a violation of Article II, Section 28 of the Ohio Constitution.

Article II, Section 28 of the Ohio Constitution provides:

> The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contract; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors in instruments and proceedings arising out of their want of conformity with the laws of this state.

This bar against retroactive laws, however, is not absolute. The Ohio Supreme Court has long recognized that Article II, Section 28 is not applicable to laws of a remedial nature providing rules of practice, courses of procedure or methods of review. *See Kilbreath v. Rudy,* 16 Ohio St.2d 70, 242 N.E.2d 658 (1968); *Weil v. Taxicabs of Cincinnati, Inc.,* 139 Ohio St. 198, 39 N.E.2d 148 (1942); *State ex rel. Slaughter v. Industrial Commission,* 132 Ohio St. 537, 9 N.E.2d 505 (1937). Recently, in *French v. Dwiggins,* 9 Ohio St.3d 32, 458 N.E.2d 827 (1984), that court held that the retroactive expansion of remedies available under Ohio's wrongful death statute was "remedial" for purposes of Article II, Section 28, and thus permissible.

■ Sovereign immunity relates only to the remedy available, not to the existence of a cause of action. *Texaus Investment Corp., M.V. v. Haendiges,* 761 F.2d 252, 256–57 (6th Cir.1985) (abolition of sovereign immunity only creates new remedies for existing duties); *Sheldon v. Industrial Commission,* 51 Ohio App.2d 125, 367 N.E.2d 51 (1976); *accord Lynch v. United States,* 292 U.S. 571, 582, 54 S.Ct. 840, 844, 78 L.Ed. 1434 (1932) (sovereign immunity affects only remedies available, not existence of rights). Thus, because the immunity provided municipalities in O.R.C. § 2744.05(B) is based in the concept of sovereign immunity, and because such immunity goes only to the remedy or remedies available and not to the existence of a cause of action, Article II, Section 28 of the

Ohio Constitution does not bar retroactive application of O.R.C. § 2744.05(B).

(C) *Impairment of Obligation of Contract.*

The insurers also argue that application of O.R.C. § 2744.05(B) to this case is a violation of the prohibitions against impairment of obligation of contract found in article I, section 10 of the United States Constitution and article II, section 28 of the Ohio Constitution,[1] because such an application of the statute would destroy the value of the consideration (the right to subrogation of the insured's claims against the City of Dayton) given in exchange for these insurers' payments (premiums) under the insurance contracts.

■ The Court finds, however, that there is no impairment of contractual obligations in this case under O.R.C. § 2744.-05(B). The contracts between these insurance companies and their insureds required the insurance companies to pay the amount of damages sustained by the insured thereto in exchange for previous payment of premiums and an assignment of the insured's claims against the alleged tortfeasors. Those contracts have been completed. Thus, the Court can find no "impairment of a contractual relationship" or "alteration of contractual obligations" such as would create a violation of the obligations of contract clause. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244-45, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978).

(D) *Equal Protection.*

The insurers also argue that O.R.C. § 2744.05(B) violates the equal protection clause of the fourteenth amendment, and is therefore invalid. The Court finds this argument to be well taken.

Initially, the Court notes that O.R.C. § 2744.05(B) creates a classification between those holding claims under a subrogation provision in an insurance or other contract (subrogated claimholders) and other claimholders. Under this classification, other claimholders have remedies for damages caused by the torts of municipalities (subject to limitations irrelevant to this discussion), while subrogated claimholders have no remedy, and thus no opportunity to obtain damages, against tortfeasor-municipalities. Such a classification raises equal protection concerns: "Property interests are ... protected by the equal protection clause to the extent that legislative classifications cannot adversely affect the property interests of a class unless the classification is rationally related to a legitimate legislative goal." *Ohio Inns, Inc. v. Nye,* 542 F.2d 673, 680 (6th Cir.1976).

In determining whether the classification created by O.R.C. § 2744.05(B) violates the equal protection clause of the fourteenth amendment, the Court must decide what standard of review is to be applied. In this case, no fundamental constitutional right or suspect class is involved,[2] and so the Court must apply the rational basis test in assessing whether this statute violates the equal protection clause of the fourteenth amendment. *See, e.g., Metropolitan Life Insurance Company v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 1682-84, 84 L.Ed.2d 751 (1985); *Edwards v. Valdez,* 789 F.2d 1477, 1483 (10th Cir.1986). "The rational basis test requires the Court to identify the class created by the statute, and then to determine whether the classification is rationally related to a legitimate government interest." *Edwards,* 789 F.2d at 1483; *see also Jackson Waterworks v. Public Utilities Commission,* 793 F.2d 1090, 1094 (9th Cir.1986); *Dimond v. District of Columbia,* 792 F.2d 179, 185 (D.C.Cir.1986). The

---

**1.** The Obligation of Contract clauses of the United States and Ohio Constitutions appear identical in effect. *See, e.g., Slusher v. Oeder,* 16 Ohio App.3d 432, 476 N.E.2d 714 (1984).

**2.** Fundamental rights (i.e., voting and interstate travel) and suspect classifications (i.e., race) are subject to a strict scrutiny review to determine whether a compelling state interest requires the classification. *See, e.g., Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983).

rational basis test requires a three step analysis:

(1) Identification of the classification created;

(2) Identification of a legitimate state purpose; and

(3) Determination of whether the classification created promotes a legitimate state interest.

*Edwards*, 789 F.2d at 1483. The Court has already noted that the classification created by O.R.C. § 2744.05(B) is between subrogated claimholders and other claimholders.

A legitimate state purpose is a "reasonable and identifiable governmental objective." *Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981). As the City of Dayton points out, the purpose of O.R.C. § 2744.05(B) is "to aid municipalities that were faced with financial ruin due to the inability to acquire insurance and the astronomical increase in liability claims and exposure." Protection of the fiscal integrity of a state's political subdivisions has been recognized as a legitimate state purpose. *See id.* at 238–39, 101 S.Ct. at 1084–85; *Shapiro v. Thompson*, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600 (1969) ("We recognize that a state has a valid interest in preserving the fiscal integrity of its program."); *Edwards*, 789 F.2d at 1483.

■ Having identified the classification created by O.R.C. § 2744.05(B), and the legitimate state purpose supporting that statute, the Court must "determine whether the classification is rationally related to [the] legitimate government interest." (whether it promotes a legitimate state interest) *Id.* In making this determination, the Court is cognizant of the rule that "[a]lthough we might find the law unwise or unartfully drawn, the Constitution does not give us the power to impose our view of what constitutes wise economic or social policy." *Id.* However, "a state may not accomplish [the goal of fiscal integrity] by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly,

... [a party] must do more than show that denying ... benefits to new parties saves money." *Shapiro*, 394 U.S. at 633, 89 S.Ct. at 1330. *See also Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). In the present case, the Court simply can find no rational connection between the state's purpose of municipal fiscal soundness and the division of claims against municipalities into those brought by subrogated claimholders (*i.e.*, insurance companies) and other claimholders. While immunity in suits brought by subrogated claimholders certainly saves municipalities money, the classification *itself* does nothing to promote fiscal soundness. The statutory classification thus is analagous to a school district attempting to save money by not providing a free education to indigent children (or the children of insurance executives). The Court therefore concludes that O.R.C. § 2744.05(B) is unconstitutional as as denial of equal protection of the law to subrogated claimholders.

In finding O.R.C. § 2744.05(B) unconstitutional, the Court notes that its effect differs from statutes which consent to waiver of sovereign immunity as to certain political subdivisions while refusing such consent as to others. The statutes drawing this distinction between political subdivisions of the state or between the state and its political subdivisions have generally been found not to violate the equal protection clause of the fourteenth amendment. *See Kranson v. Valley Crest Nursing Home*, 755 F.2d 46 (3d Cir.1985) (immunity for municipal but not state institutions); *Aubertin v. Board of County Commissioners of Woodson County, Kansas*, 588 F.2d 781 (10th Cir.1978) (immunity for counties but not municipalities); *Frazier v. Alum Crest*, 48 Ohio App.2d 283, 357 N.E.2d 407 (1976) (waiver of immunity for state but not political subdivisions). In these cases, a rational connection existed between protection of the fiscal integrity of the political subdivisions and the classifications created because the potential liability for tort damages differs between counties and municipalities, as does the income re-

ceived by these various subdivisions of the state (which would be used to pay for that liability). Thus, for example, a legislature could rationally conclude that a county could pay for the injuries to its agents because of the limited possibility of damages caused by those agents and the ready availability of income to cover those liabilities, while concluding that a municipality needed immunity because of its limited income and broad range of potential liabilities. In this case, the unconstitutional distinction is not between various political subdivisions, but between claimholders against a (the same) political subdivision.

■ The Court also notes that the fact that the classifications created by O.R.C. § 2744.05(B) relate to the sovereign immunity of municipalities does not excuse the necessity of equal protection of the laws. The equal protection clause of the fourteenth amendment is applicable whenever the state chooses to act. Thus, whenever a state chooses to waive its sovereign immunity, it must do so in a manner that does not irrationally discriminate between classes of its citizens. This requirement of equal treatment is all the more applicable to the present circumstances, in which the state is not merely dispensing a privilege, but rather is creating an immunity for its political subdivisions which heretofore (as discussed below) did not exist.

Accordingly, the Court concludes that O.R.C. § 2744.05(B) is an unconstitutional deprivation of equal protection of the laws in violation of the fourteenth amendment.[3]

### (E) *Due Process and Due Course.*

The insurers also argue that the retroactive application of § 2744.05(B) created by Substitute Senate Bill No. 297 violates the due process clause of the fourteenth amendment of the United States Constitution and the due course provision of article I, section 18 of the Ohio Constitution. The

due course provision of the Ohio Constitution and the due process clause of the fourteenth amendment provide substantially the same protection against state acts. *See Bazdar v. Koppers Co., Inc.,* 524 F.Supp. 1194, 1203 (N.D.Ohio 1981). Thus, for purposes of the present discussion, the Court will confine itself to analysis of the statutes under the federal due process provisions.

In the present case, the Court finds that the retroactive deprivation of the right to recover on a subrogated claim for tort damages caused by a municipality fails under two distinct due process theories:

(1) abolition of vested rights; and

(2) lack of a rational legislative basis.

### (a) *Abolition of Vested Rights*

Under the due process clause of the Fourteenth Amendment, "vested rights created by statute cannot be abridged by a subsequent statute that effectively takes away accrued causes of action to enforce those rights." *Hammond v. United States,* 786 F.2d 8, 11 (1st Cir.1986). This due process limitation has been recognized by the Supreme Court in various contexts. *See Coombes v. Getz,* 285 U.S. 434, 435–38, 52 S.Ct. 435, 435, 76 L.Ed. 866 (1932) (corporate charter); *Ettor v. Tacoma,* 228 U.S. 148, 155–58, 33 S.Ct. 428, 430–31, 57 L.Ed. 773 (1913) (deprivation of real property); *Steamship Company v. Joliffe,* 69 U.S. (2 Wall.) 450, 456–58, 17 L.Ed. 805 (1864) (deprivation of quasi-contractual rights). In the present case, Plaintiffs' claims against Defendant City of Dayton are based in tort (*i.e.,* trespass). In this respect, the insurers' claims are similar to the "actions to recover for damages inflicted upon abutting property in consequence of an original street grading done by the railroad company under authority and direction of the City of Tacoma," which the Supreme Court found to be vested rights in *Ettor,* 228 U.S. at 149, 33 S.Ct. at 428.

---

3. In finding that retroactive application of O.R.C. § 2744.05(B) violates the Equal Protection Clause of the fourteenth amendment, the Court notes that the Butler County Court of Common Pleas, Moser, J., has reached the same conclusion. *See Bronson v. The Provident Bank,* No. CV85–09–1014 and CV86–3–0263/0281/0294/0304/0371, slip op. at 8 (C.P. Butler Cty. Nov. 13, 1986).

In *Ettor*, however, the actions to recover for damage to property were brought under a statute requiring the City of Tacoma to compensate property owners for consequential damages caused in street grading. *Id.* at 149–50, 33 S.Ct. at 428. Specifically, the plaintiff in *Ettor* brought an action against Tacoma to recover for damage cause to his property by the city's street grading work. Plaintiff therein brought his suit under a Washington statute waiving municipal immunity for damages to private property caused by street grading. The statute was amended during the pendency of plaintiff's claim to remove the waiver of immunity, and the Washington Supreme Court thus held that plaintiff could not recover. The Supreme Court reversed, holding plaintiff had a vested right in his cause of action. In the present case, the insurers' right to proceed against the City of Dayton without being barred by the immunity defense arose from the common law decisions of the Ohio Supreme Court finding that municipalities acting in the proprietary function of providing water services had no immunity from suit. *See, e.g., Ranells v. City of Cleveland,* 41 Ohio St.2d 1, 321 N.E.2d 885, 887 (1975) ("It is ... clear that when acting in a proprietary capacity, a municipal corporation may generally be held liable for tortious conduct in the same manner as would a private corporation or individual."); *Hall v. Youngstown,* 15 Ohio St.2d 160, 239 N.E.2d 57 (1968) (City Water Department operations are acts in proprietary capacity). Some courts have suggested that common law rights, as opposed to statutory causes of action, cannot become vested prior to the entry of a final unreviewable judgment. *See, e.g., Hammond,* 786 F.2d at 12. However, the Sixth Circuit has specifically held:

> In tort claims, there is no cause of action and therefore no vested property right in the claimant upon which to base a due process challenge until *injury actually occurs.*

*Mathis v. Eli Lilly and Co.,* 719 F.2d 134, 141 (6th Cir.1983) (emphasis added); *see also Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower &*

*Clancy,* 740 F.2d 1362, 1368 (6th Cir.1984) (quoting *Mathis* ).

■ In the present case, the injury giving rise to the insurers' claims (the flooding of Sinclair Community College) occurred, and the present lawsuits were actually filed, long before the passage of § 2744.-05(B)'s limitation on liability. Upon the occurrence of an injury, a person acquires a vested right (i.e., a property right protected by the due process clause of the fourteenth amendment) in those causes of action arising out of the injury under the state law applicable at the time. Accordingly, the Court must conclude that Substitute Senate Bill No. 297's retroactive application of those limitations on liability deprives the insurers of their vested rights in violation of the due process clause of the fourteenth amendment.

### (b) *Lack of a Rational Legislative Basis*

Retroactive application of the provisions of § 2744.05(B), barring subrogated claims against municipalities, must also be found invalid under the due process clause prohibition against arbitrary and irrational legislation. In reaching this conclusion, the Court notes that "[t]he fact that the statute's retroactive application imposes new duties and upsets otherwise settled expectations is not sufficient to invalidate it, ... unless the changes it imposes are 'particularly "harsh and oppressive." ' " *North American Coal Corporation v. Campbell,* 748 F.2d 1124, 1128 (6th Cir.1984). Moreover, as the Supreme Court has stated: "[A]lthough we have noted that retrospective legislation may offend due process if it is 'particularly "harsh and oppressive" ' ... that standard does not differ from the prohibition against arbitrary and irrational legislation that we clearly enunciated in *Turner Elkhorn.*" *Pension Benefit Guaranty Corporation v. R.A. Gray & Company,* 467 U.S. 717, 733, 104 S.Ct. 2709, 2720, 81 L.Ed.2d 601 (1984).

In *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Supreme Court addressed a challenge to the Black Lung Ben-

efits Act of 1972 based, *inter alia,* upon a claim that that Act deprived coal mine operators of due property without due process of law. Under the Black Lung Benefits Act of 1972, coal mine operators became liable for payment of benefits to miners filing black lung claims after December 31, 1973, including those miners who left the mines before the Act was passed. In reviewing provisions of that Act which required the coal mine operators to pay for benefits to provide for miners who had been disabled by work in the owner's coal mines, which work had terminated prior to passage of the Act, the Court addressed the issue of due process and retroactive legislation: "It does not follow ... that what Congress can legislative prospectively it can legislate retrospectively. The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." *Id.* at 17, 96 S.Ct. at 2893. In *Turner Elkhorn,* however, the Court found that "the imposition of liability for the effects of disabilities bred in the past is justified *as a rational measure to spread the costs of employees' disabilities to those who have profited from the fruits of their labor* —the operators and the coal consumers." *Id.* at 18, 96 S.Ct. at 2893 (emphasis added). The Court noted that retroactive legislation is not violative of due process rights as long as it "approaches the problem of cost spreading rationally; whether a broader cost spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension." *Id.* at 19, 96 S.Ct. at 2894.

The reasoning of *Turner Elkhorn* has been applied in numerous cases to support retroactive liability of the employers for benefits to their employees. *See Pension Benefit Guaranty Corporation v. R.A. Gray & Company,* 467 U.S. at 729, 104 S.Ct. at 2717 ("provided that the retroac-

tive application of a statute is supported by *a legitimate legislative purpose furthered by rational means,* judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches...."); *Keith Fulton & Sons v. New England Teamsters,* 762 F.2d 1124, 1128–31 (1st Cir.1984); *Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502, 1509–11 (D.C.Cir.1984); *Republic Industries v. Teamsters Joint Council,* 718 F.2d 628, 635–39 (4th Cir.1983); *cf. Traveler's Insurance Co. v. Marshall,* 634 F.2d 843 (5th Cir.1981) (extension of benefits payable by insurer under Longshoreman's Act reasonable because insurer responsible for coverage at time of injury).

However, the rational basis test is not meaningless. To *paraphrase* Justice O'Conner's concurrence in *Connolly v. Pension Benefit Guaranty Corporation,* 475 U.S. 211, 106 S.Ct. 1018, 1028, 89 L.Ed.2d 166 (1986), in light of the circumstances of the case now before this Court, imposition of retroactive liability on insurance companies for the benefit of municipalities may be arbitrary and irrational in the absence of any connection between the insurance company's conduct and some detriment to the municipality.[4] Absent some relationship between insurance companies' subrogation of claims for their insureds and the fiscal crisis facing municipalities in Ohio, retroactive application of § 2744.-05(B) must be considered arbitrary and irrational. No such connection has been suggested by the parties, nor may the Court upon review of the statute, discern any such connection. Accordingly, the Court must conclude that retroactive application of the provisions of § 2744.05(B), retroactively barring subrogated claims against municipalities, as provided for in Substitute Senate Bill No. 297, is an unconstitutional deprivation of the insurers' property with-

---

4. Justice O'Connor's precise words were: "Our recent cases leave open the possibility that the imposition of retroactive liability on employers for the benefit of employees may be arbitrary and irrational in the absence of any connection between the employer's conduct and some detriment to the employee." *Connolly v. Pension Benefits Guaranty Corp.,* 106 S.Ct. at 1028 (O'Connor, J., concurring).

out due process of law in violation of the fourteenth amendment.

In reaching this determination, the Court is cognizant of the fact that retroactive withdrawal of remedies [5] by a sovereign has been upheld in other cases. *See Hammond,* 786 F.2d at 12–14; *Ames v. Merrill, Lynch, Pierce, Fenner and Smith,* 567 F.2d 1174, 1180 (2nd Cir.1977); *Hospital Association of New York v. Toia,* 435 F.Supp. 819, 830–31 (S.D.N.Y.1977). These cases, however, are distinguishable for several reasons. *First,* in each of those cases, when the Government withdrew a remedy, it provided the claimant with an alternative remedy. *Second,* in each of those cases, the sovereign had merely withdrawn its *consent* to be sued. In Ohio, at the time of the property damage underlying this suit, no sovereign immunity *existed* for municipalities. *See Haverlack v. Portage Homes,* 2 Ohio St.3d 26, 442 N.E.2d 749, 752 (1982) ("We hold that the defense of sovereign immunity is not available, in the absence of a statute providing immunity, to a municipal corporation in an action for damages alleged to be caused by the negligent operation of a sewage treatment plant. A municipal corporation, unless immune by statute, is liable for negligence in the performance or nonperformance of its acts."); *see also Enghauser Manufacturing Company v. Eriksson Engineering,* 6 Ohio St.3d 31, 451 N.E.2d 228 (1983). Moreover, the Ohio Supreme Court had long held, prior to the enactment of O.R.C. § 2744.05(B), that the doctrine of sovereign immunity is inapplicable where, as here, a municipality is acting in a proprietary function. *See, e.g., Hall v. City of Youngstown,* 15 Ohio St.2d 160, 239 N.E.2d 57 (1968). Thus, O.R.C. § 2744.05(B) enacts a new variety of immunity for subdivisions of the sovereign, rather than merely withdrawing consent to be sued within a scheme of existing sovereign immunity. Accordingly, any exception to

the requirement of due process that the power of sovereign immunity might provide is inapplicable to the retroactive application of O.R.C. § 2744.05(B), because that statute, rather than withdrawing a waiver of sovereign immunity, creates a "new" immunity where the Ohio courts had previously found none to exist.

The Court, therefore, concludes that retroactive application of O.R.C. § 2744.05(B) under Substitute Senate Bill No. 297, to bar the insurers' claims against the City of Dayton in this case, would constitute a deprivation of the insurers' property without due process of law.

(F) *Taking of Property Without Just Compensation.*

Finally, the insurers have argued that retroactive application of O.R.C. § 2744.05(B) to their claims in this case would constitute an unconstitutional taking of property without just compensation, in violation of the fifth amendment as made applicable to the state of Ohio through the fourteenth amendment (the "Taking Clause"). The Court finds this argument to be well taken.

In determining whether retroactive application of O.R.C. § 2744.05(B) to bar the insurers' claims against the City of Dayton would constitute a taking of property without just compensation, the Court must first decide whether the insurers' causes of action against the City of Dayton constitute property within the meaning of that constitutional provision. Courts which have addressed the specific issue of whether causes of action constitute property for purposes of the Taking Clause have split in their conclusions. *Compare In re Air Crash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1312 (9th Cir.1982) ("There is no question the claims for compensation are property interests that can-

---

5. The Court notes that under a due process analysis, as opposed to a retroactivity analysis under article II, section 28 of the Ohio Constitution, the fact that sovereign immunity affects only the existence of a remedy and not the existence of the cause of action is irrelevant.

Retroactive granting or withdrawal of remedies is specifically exempted from article II, section 28's bar to retroactive legislation. In the context of the due process clause, however, the remedy is part of the cause of action protected from arbitrary and irrational withdrawal.

not be taken for public use without compensation.") *with Hammond v. United States,* 786 F.2d 8, 15 (1st Cir.1986) ("We have already found that Plaintiff had no vested property right in her tort cause of action, so it is unlikely there could be a 'taking' here.") *and In re Consolidated United States Atmospheric Testing Litigation,* 616 F.Supp. 759, 770 (N.D.Cal.1985) ("Unlike contract claims, the tort claims asserted here lack 'investment back expectations'.... Not only are they contingent by their nature, but they also arise in a field in which the law remains to be developed."). Despite this split of authorities, upon review of Sixth Circuit and Ohio law, this Court must conclude that a cause of action is indeed property within the meaning of the Taking Clause.

In the Sixth Circuit, "[f]or fifth amendment purposes, the definition of property is broad, encompassing the entire group of rights incident to ownership." *Amen v. City of Dearborn,* 718 F.2d 789, 794–95 (6th Cir.1983). Furthermore, as noted above, in the Sixth Circuit, with respect to tort claims, a property right arises for due process purposes once an injury actually occurs. *See Hartford Fire Insurance Company v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362, 1368 (6th Cir.1984); *Mathis v. Eli Lilly and Co.,* 719 F.2d 134, 141 (6th Cir.1983).

 In addition, Ohio law indicates that a cause of action based in tort is property. In *Cincinnati v. Hafer,* 49 Ohio St. 60, 30 N.E. 197 (1892) (cited with approval in *Lakeshore Motor Freight v. Glenway Industries,* 2 Ohio App.3d 8, 440 N.E.2d 567, 569–70 (1981)), the Ohio Supreme Court set out the status of a tort cause of action:

> While a chose in action is ordinarily understood as a right of action for money arising under contract, the term is undoubtedly of much broad significance, and includes the right to recover pecuniary damages for a wrong inflicted either upon the person or the property. It embraces demands arising out of a tort as well as causes of action originating in the breach of a contract....
>
> *A thing in action, too, is to be regarded as a property right.* One of the well recognized divisions of personal property is into property in possession and property or choses in action.

(emphasis added). Thus, in light of the fact that the injury giving rise to the cause of action before the Court (the flooding on Sinclair Community College) occurred prior to the enactment of § 2744.05(B), the Court must conclude that the insurers' causes of action are property within the meaning of the Taking Clause.

 The fact that sovereign immunity applies only to the existence of a *remedy* (see discussion above regarding the constitutionality of retroactive application of § 2744.05(B) under article II, section 28 of the Ohio Constitution) and not to the existence of a cause of action as a whole is not relevant to the analysis of the constitutionality of § 2744.05(B) under the Taking Clause. It is the cause of action *with* a remedy that constitutes a property right— not the cause of action alone. *See Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). Some sort of remedy is one (and an important one) of the "bundle of rights" that makes a cause of action property. In other words, a remedy is an essential part of the cause of action as that phrase is used in a Taking Clause analysis.

Having determined that the insurers' causes of action are property within the meaning of the Taking Clause, the Court must determine whether a "taking" of these Plaintiffs' causes of action would occur by retroactive application of O.R.C. § 2744.05(B). In making this determination, the Court is cognizant that "ultimate resolution of whether the Government has unconstitutionally taken private property follows an *ad hoc* factual determination that the community, rather than the property owner, should fairly assume the cost of the official action." *Amen v. City of Dearborn,* 718 F.2d at 794. Specifically, in

determining whether a taking has occurred courts have followed a three factor test:

(1) "The economic impact of the regulation on the claimant;"

(2) "The extent to which the regulation interfered with distinct investment-backed expectations;" and

(3) "The character of the Government action."

*Connolly v. Pension Benefits Guaranty Corporation,* 475 U.S. 211, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986) (quoting *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)).

Applying the three prongs of this test in order, the Court notes that the impact of retroactive application of O.R.C. § 2744.-05(B) can only be described as severe. The insurers are deprived by the statute of any possibility of recovering any portion of the monies paid to their insured (in the case of Indiana, $3,500,000) without any substitute remedy being made available. Thus, this "taking" does not merely involve a limitation on the use of property held by them; rather, it constitutes a complete deprivation of any enjoyment of that property by the insurers.

*Second,* retroactive application of O.R.C. § 2744.05(B) interferes "with distinct investment-backed expectations." *Id.* The insurers no doubt based their determination of insurance premiums under the insurance contracts here in question in part upon the possibility of recovery on subrogated claims. At the time those insurers entered into the insurance contracts and at the time of the injury, they had reason to believe that they could proceed against municipalities for damages caused in those municipalities' proprietary functions. *See, e.g., Renells v. City of Cleveland,* 41 Ohio St.2d 1, 321 N.E.2d 885, 887 (1975). Thus, these insurers essentially made an investment: they put in the "capital" of their guaranty of payment for property damage to the insured in expectation of the immediate "return" in the form of premium payments. They set their premium rates (amount of return on investment) for the amount of coverage provided, based upon their expectation of their right to pursue a subrogated claim, to recover monies paid their insureds pursuant to the policy of insurance, against the City of Dayton when, acting in a proprietary capacity, the City allegedly caused damages to those insureds. When they were deprived of their right to pursue their subrogated claims by O.R.C. § 2744.05, they, in effect, were required to pay a greater amount of capital for those returns than they could have anticipated at the time they made their "investment" contract. The insurers were thus deprived of their investment backed expectations. To state the matter in another fashion, the insurers were deprived of the bargained for benefits of their investment, to wit: the benefits of the amount of the premium dollar over the *net* dollar payout (payment of damage claims under the policy of insurance less amount recovered from pursuing subrogated claims against the tortfeasor). The inevitable result will be that premium dollars—the return of investment—under existing policies or contracts of insurance—will not be sufficient to cover the risk (or, perhaps, the actuality) inherent in the guaranty of payment for property damages to their insureds.

Finally, O.R.C. § 2744.05(B) applied retroactively constitutes a permanent appropriation of Plaintiffs' assets (their causes of action) for the state's political subdivisions' own benefit. As noted above, the purpose of O.R.C. § 2744.05(B) and Substitute Senate Bill No. 297 is to protect the fiscal integrity of political subdivisions in the State of Ohio. As such, these acts take the Plaintiffs' property for public benefit, and, therefore, require that just compensation be paid.

 Accordingly, the Court must conclude that O.R.C. § 2744.05(B), as made retroactive by Substitute Senate Bill No. 297, effects a taking of Plaintiffs insurers' property without just compensation in vio-

lation of the fifth amendment as made applicable to the State of Ohio by the fourteenth amendment. In light of the fact that no alternative remedy is made available to Plaintiffs under these statutes for their loss, it is clear that no just compensation has been paid for the takings made by the State.

In concluding that retroactive application of O.R.C. § 2744.05(B) is invalid under the Taking Clause of the fifth amendment, the Court notes that this case is distinguishable from those cases which indicate that a Government's consent to sue under its sovereign immunity is a withdrawable privilege rather than a property right. *See Lynch v. United States*, 292 U.S. 571, 581–82, 54 S.Ct. 840, 844, 78 L.Ed. 1434 (1934); *Duisberg v. United States*, 89 F.Supp. 1019, 1022 (Ct.Cl.1950). As noted above, this is not a case in which the state of Ohio is withdrawing a previously granted consent to suit within its sovereign immunity powers. Rather, *no* sovereign immunity existed in the State of Ohio against the subrogated claims of the insurers until the passage of O.R.C. § 2744.05(B). *See, e.g., Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, 442 N.E.2d 749, 752 (1982); *Hall v. City of Youngstown*, 15 Ohio St.2d 160, 239 N.E.2d 57 (1968). The Court therefore concludes that the fact that O.R.C. § 2744.-05(B) relates to the immunity of municipalities from suit, in itself, does not save that statute from causing unconstitutional takings of Plaintiffs' property without just compensation.

In sum, the Court concludes that O.R.C. § 2744.05(B), as made retroactive by Substitute Senate Bill No. 297, is unconstitutional, and therefore invalid, as a violation of the equal protection, due process and takings clauses of the United States Constitution and the due course provisions of the Ohio Constitution. Defendant City of Dayton's Motion for Summary Judgment is therefore overruled. Insurers Indiana, Federal and Cincinnati Insurance Companies' cross motions for summary judgment,

on the defense of immunity under O.R.C. § 2744.05(B), are granted.